UNITED STATES DISTRICT COURT
NORTHERN DISTRICT INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DIANA I. DALTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:09-CV-297-TLS |
| ) | |
| YELLOW BOOK USA, ) | |
| ) | |
| Defendant. ) | |

**OPINION & ORDER**

This matter is before the Court on Defendant Yellowbook Inc.'s Motion for Summary Judgment [ECF No. 35], filed on July 12, 2011. Defendant Yellowbook, Inc., is the successor in interest to Yellow Book Sales and Distribution Company, Inc., which was improperly identified in the Complaint as Yellow Book USA. The Plaintiff, Diana I. Dalton, sued the Defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*., claiming that her former employer discriminated against her on the basis of her race, age, and gender and retaliated against her for making a complaint of discrimination. In support of its Motion for Summary Judgment on these claims, the Defendant filed a Brief in Support [ECF No. 36] and Appendix of Evidentiary Materials [ECF No. 37]. Because the Plaintiff is proceeding pro se, the Defendant provided the Plaintiff with Notice [ECF No. 38] of the relief it was seeking. *See* N.D. Ind. L.R. 56.1(f). The Plaintiff then requested, and the Court granted, additional time for her to respond. In addition, the Court conducted a status hearing to advise the Plaintiff of her response deadline and provide her with copies of the Local Rules, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence. The Plaintiff's response deadline has passed, and she has not responded to the

Defendant's Motion for Summary Judgment or made any other filing in this case. For the reasons set forth in this Opinion, the Court finds that there are no genuine issues of material fact that warrant a trial, and it grants the Defendant's Motion.

## STANDARD OF REVIEW

Summary judgment is appropriate if the facts supported by materials in the record show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. The motion should be granted so long as no rational fact finder could return a verdict in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249–50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* N.D. Ind. L.R. 56.1(a) (stating that the movant must provide a "Statement of Material Facts" that identifies the facts that the moving party contends are not genuinely disputed). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed in Rule 56 to designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000); N.D. Ind. L.R. 56.1(b) (directing that a response in opposition to a motion for summary judgment "must include a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely

disputed so as to make a trial necessary").

## STATEMENT OF FACTS

The Court considers the following facts, which are derived from designated citations to the Plaintiff's deposition and the Declarations of Thad Russell, Kenneth Klivickis, and Tamara Carson, and construed in a light most favorable to the Plaintiff, to be undisputed for purposes of summary judgment. *See* Fed. R. Civ. P. 56(e)(2).

The Defendant is a national independent publisher of print and internet-based yellow pages directories in Indiana and elsewhere throughout the United States. The Defendant employs sales representatives to sell advertising in its print and internet directories. The sales representatives receive one of five designations: account representative; account executive; senior account executive; account manager; and senior account manager. The Defendant organizes the work of its sales teams by "canvass," which refers to a set period of time to sell advertising in a directory for a specific geographic area. At the beginning of every canvass, the Defendant, through a Sales Planning Team located in Westchester, Illinois, makes revenue assignments for each sales representative. "Revenue" is the term the Defendant uses for businesses that paid for advertising in the Defendant's directory the previous year. The Sales Planning Team assigns revenue based on a representative's level, the clients to whom the representative sold during the previous year's canvass, and the representative's overall work performance. The Sales Planning Team frequently assigns additional revenue to the representatives during the course of a canvass, and its goal is to assign sales representatives on the same or similar levels who are working on the same team roughly the same total revenue

over the course of a year. In addition to revenue, the Sales Planning Team distributes new business sales leads to sales representatives based on representative level and overall work performance. Using these assignments, the Defendant creates revenue renewal and new business sales objectives for each sales representative. At the end of the year, the Sales Planning Department ranks sales representatives in a particular region by performance as it relates to their achievement of the previously-identified goals.

During a canvass, sales representatives may place potential new business on a "protected list" to prevent other sales representatives from calling on those customers. However, towards the end of a canvass, management declares "open season" on any un-sold new business, including the protected list, and all leads become available for any representative to pursue.

The Plaintiff, who is a Caucasian female born in 1958, began working for the Defendant in 2002. In 2008, the Plaintiff was an account executive in the Fort Wayne office, the second level of sales representatives, and was responsible for selling yellow pages advertising. The Plaintiff reported to District Sales Manager, Jay Sliker, who in turn reported to Canvass Manager David Hassett. Regional Manager Thad Russell was above Hassett.

On December 19, 2008, the Plaintiff called Tamara Carson, the Defendant's Regional Human Resources Manager, to complain about a number of incidents that she perceived to be unfair or discriminatory. In response, Carson contacted Russell, who agreed to investigate the Plaintiff's claims. Russell visited the Fort Wayne office and met with Sliker and Hasset. The Plaintiff's complaints and Russell's findings are described below.

First, the Plaintiff complained that other lower level sales representatives received between $125,000 and $200,000 in revenue assignments during the 2008 Fort Wayne canvass

while she only received $70,000, even though her goals were not comparably lower. In particular, the Plaintiff took issue with the amount of revenues assigned to Nate Woenker, a Caucasian male under 40 years old. When Russell investigated this complaint, he learned that the Plaintiff had been assigned $254,808 in revenue during the Fort Wayne canvass and Woenker received $196,668. He concluded that no discrimination had occurred.

     The Plaintiff also complained about an incident that occurred a few days before she called Carson. During the open season for the 2008 Fort Wayne canvass, the Plaintiff scheduled an appointment to discuss advertising with a Fort Wayne-based business, Sweetwater Sound. However, when she informed Hassett about the appointment, he told her that another representative, Carl Dean, had already scheduled an interview with Sweetwater Sound and was pursuing a sale with the company. According to the Plaintiff, this was suspicious because her contact at Sweetwater did not know about the appointment with Dean (although her contact suggested that Dean may have scheduled with a different Sweetwater Sound employee). The Plaintiff took Hassett's comment to mean that she should not pursue the sale. Based on this event, the Plaintiff alleged that management seemed to favor helping the men in the office. When he investigated, Russell learned that Dean's pursuit of a sale with Sweetwater Sound was consistent with company policy regarding open season calling to un-sold customers. In addition, Russell learned that Hassett believed that the Plaintiff and Dean were working on the account together since each of them had a different contact.

     The Plaintiff complained to Carson that Hassett had reprimanded her in front of her coworkers for failing to follow directions. In response to Russell's inquiry, Hassett acknowledged that he had once reprimanded the Plaintiff during a call-out session because she

ignored his direct and repeated orders to call customers.[1] Later, when Russell asked the Plaintiff about the incident, she admitted that she had not followed the instructions of her supervisor.

The Plaintiff told Carson that Sliker and Hassett rode along with other sales representatives to help with their sales more often that they did with her, and that they generally treated all the other sales representatives better than they treated her. The Plaintiff complained that during the 2008 Fort Wayne canvass, Sliker did not help her with a problem client, Gene's Sewer Service, even though he had helped the other representatives with problem clients. When Russell investigated the Plaintiff's claims, he learned that Hassett had been on four client appointments with the Plaintiff since he was hired in August 2008, had made at least one sale for her, and had told the Plaintiff to let him know if she ever needed help.

On December 29, 2008, Carson, Russell, and the Plaintiff participated in a telephonic conference call to discuss the Plaintiff's complaints and the Defendant's investigation. Carson and Russell told the Plaintiff the results of their findings, including that Dean had indicated he was no longer pursuing the Sweetwater Sound account and she was free to do so during the final days of the canvass, she had more revenue in the Fort Wayne canvass than Woenker, and they had been unable to substantiate any age or gender discrimination. Russell and Carson encouraged the Plaintiff to call them if she had any other concerns.

At the end of the 2008 canvass, Sweetwater Sound had not purchased any advertisement in the Fort Wayne directory. Also in December 2008, Hassett helped the Plaintiff resolve the issues with Gene's Sewer Service, and she received credit for the sale in the 2008 Fort Wayne

---

[1] A manager can conduct a call-out session near the end of a canvass, directing all representatives to call on any potential client that has not purchased advertising during the canvass.

canvass.

In the canvass immediately following the Plaintiff's complaints to Carson, the January 2009 Angola canvass, the Sales Planning Team assigned the Plaintiff $71,604 in revenue. This was lower revenue than any other sales representatives on her team received initially. The Plaintiff called Russell to complain and he encouraged her to be patient because things would change over the course of the canvass. By May 1, 2009, the Sales Planning Team assigned the Plaintiff an additional $31,860 in revenue for the Angola canvass. By this time, the Plaintiff had filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). However, the Sales Planning Team was unaware of the March 19, 2009, EEOC charge or of the Plaintiff's December 2008 complaints to Carson.

In January 2010, the Plaintiff took a leave of absence from work to care for her ailing mother. She returned briefly in February, but then notified the Defendant that she was unable to work due to a stress-induced condition. On March 3, she took medical leave and never returned to work.

## ANALYSIS

The Plaintiff asserts in her Complaint that the Defendant discriminated against her on the basis of her age, her gender, and her race, in addition to retaliating against her for complaining about discrimination. Because the Plaintiff asserts the retaliation claim as her main claim, the Court addresses it first.

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because [the employee]has opposed any practice made an unlawful employment

7

practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Likewise, the ADEA makes it unlawful "for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). When asserting a charge of retaliation under Title VII or the ADEA, a plaintiff may proceed under the direct or indirect method of proof. *Metzger v. Ill. State Police*, 519 F.3d 677, 681 (7th Cir. 2008); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). Under the direct method of proving retaliation, a plaintiff must present either direct or circumstantial evidence showing that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action taken by the employer; and (3) a causal connection exists between the protected activity and the adverse action. *Barton v. Zimmer*, 662 F.3d 448, 455 (7th Cir. 2011); *Humphries v. CBOS W., Inc.*, 474 F.3d 387, 404 (7th Cir. 2007). Under the indirect, burden-shifting method, the plaintiff must establish a prima facie case of retaliation by showing that: (1) she engaged in statutorily protected activity; (2) she was performing her job to her employer's legitimate expectations; (3) she suffered a materially adverse action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected expression. *Atanus v. Perry*, 520 F.3d 662, 672–73 (7th Cir. 2008); *Metzger*, 519 F.3d at 681. Under either the direct or burden-shifting approach, the Plaintiff must demonstrate that she suffered a "materially adverse" action. *See Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 848–49 (7th Cir. 2007).

The Defendant argues that it is entitled to judgment as a matter of law because, among other shortcomings, the Plaintiff cannot show that she suffered any materially adverse action after engaging in protected activity. The Defendant asserts that the Plaintiff's allegation that giving her only $71,000 in revenue for the 2009 Angola canvass was retaliation for making a complaint is not viable for the additional reason that revenues were assigned by a team that had no knowledge of her complaints. The Defendant argues that several of the alleged acts of retaliation never occurred, or, even if they did, have no connection to the Defendant or to the Plaintiff's protected activity.

The Plaintiff believes that the Defendant retaliated against her by assigning her lower revenues in 2009. The Defendant has established through designated evidence that the Sales Planning Team, which was responsible for making revenue assignments, had no knowledge of the Plaintiff's December 2008 complaints to Carson when it made the assignment. The Plaintiff has not disputed this fact. An employer must have had actual knowledge of the complaints for its decisions to be retaliatory. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668 (7th Cir. 2006) (citing *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004)); *see also Abuelyaman v. Ill. State Univ.*, — F.3d —, 2011 WL 6188446, at *11 (7th Cir. Dec. 13, 2011) (summary judgment proper on retaliation claim where the plaintiff failed to put forth sufficient evidence to allow for a reasonable inference that the decision makers knew of his participation in another employee's complaint investigation at the time they made an adverse employment decision); *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994) ("[T]here generally can be no causal link between protected activity and an adverse employment action if the employer remained unaware of the protected activity.").

The Plaintiff also claims that during the 2009 Angola canvass, two other sales representatives called on three of her protected clients, and that Hassett directed the sales representatives to take this action. The Court finds several flaws in the Plaintiff's claim. First, the actions of the sales representatives were not materially adverse to the Plaintiff. Although materially adverse actions are not limited to employment-related activities, they must produce an injury or harm; that is, they must be severe enough to dissuade a reasonable employee from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67–68 (2006); *see also Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 868 (2011); *Barton*, 662 F.3d at 456 (noting that while the "standard for a materially adverse action sufficient for a retaliation claim is somewhat more forgiving than for a discrimination claim, . . . the action must be severe enough to dissuade a reasonable employee from exercising statutory rights") (citing *Lapka v. Chertoff*, 517 F.3d 974, 985–86 (7th Cir. 2008)). "Material adversity" separates significant from trivial harms, *White*, 548 U.S. at 68, because "not everything that makes an employee unhappy is an actionable adverse action," *Oest v. Ill. Dep't of Corrs.*, 240 F.3d 605, 613 (7th Cir. 2001) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)). Two of the identified businesses declined to place any advertising in the Defendant's directory, and the Plaintiff received credit for selling the third client's advertisement. By the end of the year, the Plaintiff ranked eighth out of twenty-four sales representatives in her region, which was a marked improvement from her performance in 2008 when she ranked fifteenth out of twenty-one sales representatives. Thus, there is no evidence that the Plaintiff suffered any injury to her ability to make sales. Even if merely dealing with the thought that her clients were being stolen away from her was sufficiently material, there is no credible evidence that Hassett condoned or

encouraged the conduct. The Plaintiff speculates that the sales representatives would not have contacted protected list clients without Hassett's approval, but her speculation is not enough to raise a genuine issue of material fact on the issue. A reasonable employee may have been upset by coworkers pursuing protected clients, but would not be deterred from making or supporting a charge of discrimination on the basis of conduct that could readily be perceived as aggressive and competitive selling and which produced no discernable injury or harm. *See Thompson*, 131 S. Ct. at 868; *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 678 (7th Cir. 2010); *see also White*, 548 U.S. at 68 (noting that an "employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience"). Additionally, and equally detrimental to her claim, the Plaintiff has not pointed to any "evidence that reasonably suggests" that these actions were related to her protected activity, *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 741 (7th Cir. 2011), or that the offending sales representatives or supervisors treated her differently with respect to the protected list than they treated other coworkers who did not engage in statutorily protected activity. There is no evidence from which a jury could conclude that the Plaintiff's statutorily protected activity precipitated her coworkers' decision to call on three of her clients.

  The Plaintiff also believes that unknown persons intercepted her cell phone calls, and that unidentified potential customers failed to show up for appointments with her. The Court assumes that the Plaintiff believes her employer was somehow responsible for these events, but she does not produce any facts from which a reasonable jury could find that the events occurred, much less that the Defendant had any connection to them. Antiretaliation provisions, of course, are

limited to an employer's conduct. Finally, the Plaintiff's conclusion that Hassett was unfriendly and Sliker was aloof do not support an ADEA or Title VII retaliation claim. She does not connect their attitudes or actions to any specific harm she suffered—or that a reasonable employee in her situation would suffer—or otherwise suggest that their actions would dissuade a reasonable employee from complaining. *See White*, 548 U.S. at 68 (stating that "petty slights, minor annoyance, and simple lack of good manners" will not create a deterrence to victims of discrimination from complaining). Nor does she attempt to connect their behavior to her complaints of discrimination. In fact, she claims that they acted this way toward her even before she complained to Carson.

The Plaintiff has not presented evidence from which a reasonable jury could find that the Defendant took materially adverse actions against the Plaintiff because she engaged in protected activity and the Defendant is entitled to judgment as a matter of law on the retaliation claim.

**B.      Gender and Age Discrimination**

Title VII makes it unlawful for an employer to discharge or discipline an employee because of that person's sex. 42 U.S.C. § 2000e–2(a)(1). Under the ADEA, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA follows the same legislative pattern as Title VII, *EEOC v. Elrod*, 674 F.2d 601, 607 (7th Cir. 1982), and courts "employ essentially the same analytical framework to employment discrimination cases whether they are brought under the ADEA [or] Title VII," *Cerutti v. BASF Corp.*, 349 F.3d

1055, 1060 n.4 (7th Cir. 2003). *See also Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 n.3 (7th Cir. 2009). A plaintiff may prove discrimination under Title VII or the ADEA either directly or indirectly under the burden-shifting method identified in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Cerutti*, 349 F.3d at 1060 (age); *Silverman*, 637 F.3d at 733 (Title VII).

Under the indirect method, the plaintiff carries the initial burden under the statute of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. To establish a prima facie case of discrimination a plaintiff must offer evidence that: "(1) she is a member of a protected class; (2) her job performance met the employer's legitimate expectations; (3) . . . she was subjected to an adverse employment action; and (4) her employer treated similarly situated employees outside of the protected class more favorably." *Eaton v. Ind. Dep't of Corrs.*, 657 F.3d 551, 554 (7th Cir. 2011) (quoting *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 559 (7th Cir. 2007); *see Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750–51 (7th Cir. 2006). The Plaintiff's failure to establish even one element of a prima facie case warrants summary judgment for the Defendant. *Traylor v. Brown*, 295 F.3d 783, 790 (7th Cir. 2002).

Here, the Plaintiff has not presented evidence that she suffered an adverse employment action, or that other, similarly situated male employees were treated more favorably. Title VII's prohibition against discrimination with respect to terms, conditions, or privileges of employment reaches only "material, sufficiently important alterations of the employment relationship (often referred to as 'adverse employment actions')." *Brewer v. Bd. of Trs. of Univ. of Ill.,* 479 F.3d 908, 916–17 (7th Cir. 2007). "Adverse employment actions for purposes of antidiscrimination statutes generally fall into three categories: (1) termination or reduction in compensation, fringe

benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton*, 662 F.3d at 453–54 (citing *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744–45 (7th Cir. 2002)); *see also Crady v. Liberty Nat'l Bank and Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993) ("A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.").

Employees are similarly situated if they are directly comparable in all material aspects. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002). "[T]he similarly-situated inquiry is flexible, common-sense, and factual. It asks 'essentially, are there enough common features between individuals to allow a meaningful comparison?'" *Coleman v. Donahoe*, — F.3d —, 2012 WL 32062, at *1 (7th Cir. Jan. 6, 2012) (quoting *Humphries*, 474 F.3d at 405). Courts can consider whether the comparable employees "1) had the same job description; 2) were subject to the same standards; 3) were subject to the same supervisor; and 4) had comparable experience, education, and other qualifications." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 791 (7th Cir. 2007) (citing *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005)).

The Plaintiff claims that one male employee received more revenues than she did during the 2008 Fort Wayne canvass. This allegation, however, is not borne out in the evidence, which shows that the Defendant assigned the Plaintiff more revenue. The Plaintiff also asserts that another male employee received more favorable treatment with respect to a potential sale to

Sweetwater Sound. It is not clear from the ambiguous record regarding the handling of the Sweetwater account how it was adverse to the Plaintiff, especially where the events complied with open season procedures, the Plaintiff was informed that she could pursue the sale, and Sweetwater placed no advertising through either employee. The loss of monetary gain to which an employee is not automatically entitled is not an adverse employment action. *Cf. Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008) (finding that the plaintiff's claim that she suffered an adverse employment action when she was denied a discretionary bonus failed as a matter of law). Likewise, the reprimand is insufficient to create a genuine issue of material fact. It did not lead to any discipline or otherwise alter the terms and conditions of her employment. *See Oest*, 240 F.3d at 613 (finding that oral and written reprimands that did not lead to any immediate consequence did not implicate sufficiently "tangible job consequences") (citing *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998)); *see also Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (same). Even if the Plaintiff could show that she suffered an adverse employment action, she admits that she was not following her supervisor's directions, and she has not pointed to any similarly situated male employee or younger employee who engaged in similar conduct but was not verbally warned.

      The Plaintiff perceived that Hassett did not treat her as well as other employees, but her example of this—Hassett did not go on as many sales calls with her—is not supported by any evidence. Nor has she shown that the number of sales calls her supervisor accompanied her on resulted in any distinct injury, changed the terms or conditions of her employment, or significantly reduced her career prospects. Finally, she has not attempted to point to common features between her and the other employees she claims received better treatment, foreclosing

15

any chance that a reasonable jury could make a meaningful comparison and infer that an impermissible animus motivated Hassett.

The Plaintiff has not offered any evidence that the Defendant altered the financial terms of her employment or her job responsibilities. In addition, none of the matters she complained about created conditions that subjected her to "a humiliating, degrading, unsafe, unhealthful, or otherwise significant[ ] negative alteration in her workplace." *Herrnreiter*, 315 F.3d at 744 (discussing the third general category of adverse employment actions). The Plaintiff's case consists of uncorroborated generalities of the type that are insufficient to support a discrimination claim. *See, e.g., Oest*, 240 F.3d at 615 (noting the inadequacy of speculation and conclusory assertions that lack specific evidence); *see also Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863 (7th Cir. 2005) ("[N]ot every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a [protected class]."). The Defendant is entitled to judgment as a matter of law on the Plaintiff's gender and age discrimination claims.

**C.     Race Discrimination**

On the form Employment Discrimination Complaint the Plaintiff filed in this cause [ECF No. 3], she checked the line next to Title VII and the Age Discrimination in Employment Act, and explained that she was subject to race, gender, and age discrimination and retaliated against for filing a charge of discrimination. In her deposition the Plaintiff, who is Caucasian, said that she checked all these boxes on her EEOC charge because "[t]he attorney said I had to check all of those." (Pl.'s Dep. 219, ECF No. 37-6.) She clarified that what she was really concerned about

was retaliation. In its Motion for Summary Judgment, the Defendant demonstrated that the Plaintiff lacked any evidence in support of a reverse race discrimination claim. The Plaintiff has not designated specific material facts showing that there is a genuine issue for trial. More specifically, she has not attempted to produce any evidence that race motivated the Defendant's employment decisions. "When a plaintiff fails to produce evidence, the defendant is entitled to judgment; a defendant moving for summary judgment need not produce evidence of its own." *Marion v. Radtke*, 641 F.3d 874, 876–77 (7th Cir. 2011) (citing *Celotex*, 477 U.S. 317). The Court finds no genuine issue of material fact to warrant a trial on the Plaintiff's race discrimination claim, and the Defendant is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendant's Motion for Summary Judgment [ECF No. 35]. Judgment will be entered in favor of the Defendant and against the Plaintiff.

SO ORDERED on February 8, 2012.

                                              s/ Theresa L. Springmann
                                              THERESA L. SPRINGMANN
                                              UNITED STATES DISTRICT COURT